1

2

3

4

5

6

7

8            UNITED STATES  DISTRICT COURT

9              Northern District of California

10                San Francisco Division

11  DEMETRIUS MANCE,                          No. CV 11-03717 LB

12              Plaintiff,              **ORDER GRANTING DEFENDANT'S**
                                         **MOTION TO COMPEL**
        v.                               **ARBITRATION**
13

14  MERCEDES-BENZ USA,                     [ECF No. 5]

              Defendant.
15  _____/

16                    **I.  INTRODUCTION**

17      Plaintiff Demetrius Mance bought a new Mercedes-Benz automobile.  As it turns out, the car had

18  many problems, so, after numerous failed attempts to fix it, Mr. Mance sued Mercedes-Benz USA,

19  LLC ("Mercedes-Benz"), the car's manufacturer, for violation of the Song-Beverly Consumer

20  Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*, California's Lemon Law.  Mercedes-Benz moved to

21  compel Mr. Mance to arbitrate his claims pursuant to an arbitration clause found in the contract he

22  signed when he purchased the car.  For the reasons set forth below, the court finds the arbitration

23  clause to be enforceable and, accordingly, **GRANTS** Mercedes-Benz's motion.[1]

─────────────

25      [1] As explained in more detail below, the court previously heard substantive oral argument on
    Mercedes-Benz's motion on October 20, 2011 and discussed the motion with the parties several
26  times at subsequent status conferences.  Accordingly, and pursuant to Civil Local Rule 7-1(b), the
    court finds this matter to be suitable for determination without further oral argument and **VACATES**
27  the October 4, 2012 motion hearing.  However, in light of the logistical issues resulting from this
    decision, the October 4, 2012 status conference remains on calendar.  Pursuant to the 8/30/2012

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

## II. BACKGROUND

On or about October 25, 2008,[2] plaintiff Demetrius Mance, a California resident, bought a new 2008 Mercedes-Benz E350 from Mercedes-Benz of Sacramento ("Dealer"), a dealer of automobiles made by defendant Mercedes-Benz.  Complaint, ECF No. 1 ¶ 5.[3]  To purchase the car, Mr. Mance was required to sign a Retail Installment Contract (hereafter, the "contract").  Motion, ECF No. 6 at 2; Universal Decl., ECF No. 7, Ex. A.  Upon doing so, Mercedes-Benz expressly warranted, as Mr. Mance alleges, "to preserve or maintain the utility or performance of the subject vehicle." Complaint, ECF No. 1 ¶ 8.

Mr. Mance alleges that the car has experienced numerous problems that are covered under the warranty.  *Id.* ¶¶ 9-13.  Despite its attempts, Mercedes-Benz has not been able to repair the car.  *Id.* ¶ 10.  Mr. Mance then filed the instant lawsuit against Mercedes-Benz for breach of an express warranty, an implied warranty of merchantability, and an implied warranty of fitness in violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*, also known as California's Lemon Law.[4]  *See* Complaint, ECF No. 1.

_____

Minute Order, the parties may appear telephonically by making the appropriate arrangements through CourtCall.

[2] Mr. Mance's complaint alleges that he bought the car on or about October 25, 2008, but the contract he signed in order to buy it is dated October 26, 2011.  *Compare* Complaint, ECF No. 1 ¶ 5 *with* Universal Decl., ECF No. 7, Ex. A.

[3] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[4] To state a viable claim under California's Song-Beverly Consumer Warranty Act, a plaintiff must plead sufficiently a breach of warranty under California law.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009).

To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury.  *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  A plaintiff also must plead that he or she provided the defendant with pre-suit notice of the breach.  Cal. Commercial Code § 2607.

The Song-Beverly Consumer Warranty Act provides that "every sale of consumer goods that

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    Mercedes-Benz has now moved for an order compelling Mr. Mance to arbitrate his claim

2    because the contract he signed contains an arbitration clause, which states in relevant part:

3         Any claim or dispute, whether in contract, tort, statute, or otherwise (including the
          interpretation and scope of the arbitration clause, and the arbitrability of the claim or
4         dispute), between you and us . . . which arises out of or relates to your credit
          application, purchase or condition of this vehicle, this contract or any resulting
5         transaction or relationship (including any such relationship with third parties who do
          not sign this contract) shall, at your or our election, be resolved by neutral, binding
6         arbitration and not by a court action. . . .

7         . . . We will advance your filing, administration, service or case management fee
          and your arbitrator or hearing fee all up to a maximum of $2500, which may be
8         reimbursed by decision of the arbitrator at the arbitrator's discretion. . . . The
          arbitrator's award shall be final and binding on all parties, except that in the event the
9         arbitrator's award for a party is $0 or against a party is in excess of $100,000, . . . that
          party may request a new arbitration under the rules of the arbitration organization by
10        a three-arbitrator panel. . . . Any arbitration under this arbitration clause shall be
          governed by the Federal Arbitration Act (9 U.S.C. § 1, *et seq.*) and not by any state
11        law concerning arbitration.

12   Motion, ECF No. 6, Ex. A.  Mr. Mance opposed Mercedes-Benz's motion.  Opposition, ECF No. 13.

13   He argues that (a) Mercedes-Benz, as a non-signatory to the contract, lacks standing to enforce the

14   arbitration clause found within it, and (b) the arbitration clause is unconscionable and, thus,

15   unenforceable.

16       The court heard oral argument on the motion on October 20, 2011.  At the hearing, the court and

17   parties discussed the possibility of settlement, and with the parties' agreement, the court deferred

18   ruling on Mercedes-Benz's motion until the parties engaged in limited discovery and attended

19   mediation, and until after Mr. Mance's automobile could be inspected.  10/20/2011 Minute Order,

20

21   are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's

22   implied warranty that the goods be merchantable."  Cal. Civ. Code § 1792.  Goods in conformity

23   with the implied warranty of merchantability: "(1) Pass without objection in the trade under the
     contract description[;] (2) Are fit for the ordinary purposes for which such goods are used[;] (3) Are

24   adequately contained, packaged, and labeled[;] and (4) Conform to the promises or affirmations of
     fact made on the container or label."  Cal. Civ. Code § 1791.1(a).  An "[i]mplied warranty of

25   fitness" means "(1) that when the retailer, distributor, or manufacturer has reason to know any

26   particular purpose for which the consumer goods are required, and further, that the buyer is relying
     on the skill and judgment of the seller to select and furnish suitable goods, then there is an implied

27   warranty that the goods shall be fit for such purpose and (2) that when there is a sale of an assistive
     device sold at retail in this state, then there is an implied warranty by the retailer that the device is

28   specifically fit for the particular needs of the buyer."  Cal. Civ. Code § 1791.1(b).

1   ECF No. 16; 10/24/2012 Order, ECF No. 17; Stipulation, ECF No. 21.  Mediation did not resolve

2   the case, Certification of ADR Session, ECF No. 26, and the court discussed the case and Mercedes-

3   Benz's motion again at a status conference on March 1, 2012. 3/1/2012 Minute Order, ECF No. 27.

4   The parties expressed the possibility that a car inspection during the summer months might be

5   helpful (to better examine the automobile's air conditioning system), so the court once again

6   deferred ruling on Mercedes-Benz's motion.  *Id.*; 3/2/2012 Order, ECF No. 28.  The court again

7   heard from the parties at a status conference on August 30, 2012, and the parties informed the court

8   that the inspection of the automobile had been done.  8/30/2012 Minute Order, ECF No. 32.

### III.  LEGAL STANDARD

10      Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be

11  valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

12  revocation of a contract."  9 U.S.C. § 2.  "Once the court has determined that an arbitration

13  agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the

14  court's only role is to determine whether a valid arbitration agreement exists and whether the scope

15  of the dispute falls within that agreement."  *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005

16  WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic*

17  *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  If the court is satisfied "that the making of the

18  arbitration agreement or the failure to comply with the agreement is not in issue, the court shall

19  make an order directing the parties to proceed to arbitration in accordance with the terms of the

20  agreement."  9 U.S.C. § 4.

21      The FAA reflects a "liberal federal policy favoring arbitration agreements."  *Gilmer v.*

22  *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25  (1991) (quoting *Moses H. Cone Mem'l Hosp. v.*

23  *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Nonetheless, when a question arises as to whether

24  "a particular party is bound by the arbitration agreement," "the liberal federal policy regarding the

25  scope of arbitrable issues is inapposite."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir.

26  2006) (emphasis in original; citation omitted).

27  ///

28  ///

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

C 11-03717 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

# IV.  DISCUSSION

## A.  <u>Whether Mercedes-Benz May Enforce the Arbitration Clause</u>

The FAA "imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, S.Ct. 1758, 1773 (2010) (quoting *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 479 (1989)).[5]  "The right to compel arbitration stems from a contractual right," which generally "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993) (citation omitted).

"The courts have made clear, however, that an obligation to arbitrate does not attach only to those who have actually signed the agreement to arbitrate.  In certain circumstances, a signatory can compel a nonsignatory to arbitrate.  For example, a nonsignatory may be bound by an agreement to arbitrate under ordinary contract and agency principles, such as '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) (quoting *Comer*, 436 F.3d at 1101) (adopting magistrate judge's report and recommendation).

"Conversely, in certain circumstances, a nonsignatory can compel a signatory to arbitrate.  For instance, a nonsignatory can enforce an arbitration agreement as a third-party beneficiary.  Also, a signatory can be compelled to arbitrate at the non-signatory's insistence under 'an alternative

---

[5] Under the FAA, the question of whether a nonsignatory can compel a signatory to arbitrate a claim pursuant to an arbitration agreement is determined by the federal substantive law of arbitrability. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) ("The Supreme Court has directed that we 'apply ordinary state law principles that govern the formation of contracts,' and the 'federal substantive law of arbitrability.'  Thus state law determines questions 'concerning the validity, revocability, or enforceability of contracts generally,' but the [FAA] and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, enforced by 9 U.S.C. §§ 201-08 (1994), 'create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'") (internal citations omitted); *see also Boucher v. Alliance Title Co.*, Inc., 127 Cal. App. 4th 262, 268 (2005); *Metalclad Corp. v. Ventana Environmental Organizational P'ship*, 109 Cal. App. 4th 1705, 1712-13 (2003).

1  estoppel theory' – *i.e.*, 'because of the close relationship between the entities involved, as well as the

2  relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . .

3  and [the fact that] the claims were intimately founded in and intertwined with the underlying

4  contract obligations.'" *Id*. at 830-31 (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64

5  F.3d 773, 778 (2d Cir. 1995) and citing *Comer*, 436 F.3d at 1101) (internal citations and quotation

6  marks omitted). Indeed, "courts have generally found . . . [that] arbitration is more likely to be

7  attained when the party resisting arbitration is a signatory." *Amisil*, 622 F. Supp. 2d at 831 (citing

8  *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005); *Merrill Lynch Investment*

9  *Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003); *Thomson-CSF*, 64 F.3d at 779).

10  Here, the court is faced with the latter circumstance, as Mercedes-Benz, a nonsignatory to the

11  contract, contends that Mr. Mance, a signatory, should be compelled to arbitrate his claim under an

12  alternate estoppel theory.[6] Two kinds of equitable estoppel may support a nonsignatory's right to

---

14  [6] Mercedes-Benz also contends that Dealer was its agent, and "[w]here a principal-agency relationship allegedly exists between a signatory and non-signatory to the arbitration agreement, the non-signatory is also bound by that agreement due to that relationship." Motion, ECF No. 6 at 17 (citing *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1284 (2007); *Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985)). It is true that Ninth Circuit precedent establishes that "agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities of agents . . . and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Amisil*, 622 F. Supp. 2d at 832 (summarizing the holdings of *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185 (9th Cir. 1986) and *Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993)). But Mercedes-Benz's argument is not persuasive for two reasons. First, the case law that Mercedes-Benz cites addresses situations where nonsignatory agents enforced arbitration agreements signed by their principals, but here a nonsignatory (purported) principal is attempting to enforce an arbitration agreement signed by the (purported) agent. *See Dryer*, 40 Cal.3d at 418 (nonsignatory defendant, who was the agent of a signatory, was allowed to enforce arbitration clause); *Rowe*, 153 Cal. App. 4th at 1284-90 (nonsignatory individual defendants could enforce arbitration agreement in part because they were agents of signatory corporation). Perhaps a principal can assert its agent's contractual arbitration remedy, but Mercedes-Benz does not make that argument sufficiently. Second, Mercedes-Benz has not put forth evidence to demonstrate that Dealer even was its agent (instead stating that "of course" it was). Motion, ECF No. 6 at 16. But Mr. Mance points out in his opposition that Dealer is not owned or operated by Mercedes-Benz. Opposition, ECF No. 13 at 11; Gray Decl., ECF No. 13-2 ¶ 13.

1    compel arbitration: (1) when the signatory's claims against a nonsignatory arise out of the

2    underlying contract; and (2) when the nonsignatory's conduct is intertwined with a signatory's

3    conduct.

4        First,

5            equitable estoppel applies when the signatory to a written agreement containing an
             arbitration clause must rely on the terms of the written agreement in asserting its

6            claims against the nonsignatory.  When each of a signatory's claims against a
             nonsignatory makes reference to or presumes the existence of the written agreement,

7            the signatory's claims arise out of and relate directly to the written agreement, and
             arbitration is appropriate.

8

9    *Fujian Pacific Elec. Co. v. Bechtel Power Corp.*, No. C 04-3126 MHP, 2004 WL 2645974, at *5

10   (N.D. Cal. Nov. 19, 2004) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.

11   1999) and discussing federal appellate caselaw).  *See, e.g.*, *Sunkist Soft Drinks, Inc. v. Sunkist*

12   *Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) ("Although Sunkist does not rely exclusively on

13   the license agreement to support its claims, each claim presumes the existence of such an agreement.

14   We find that each counterclaim maintained by Sunkist arises out of and relates directly to the license

15   agreement."); *Amisil*, 622 F. Supp. 2d at 840 (quoting *Fujian*).  It applies in such a situation because

16   "[a] signatory to an agreement cannot . . . 'have it both ways': it cannot on the one hand, seek to

17   hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an

18   arbitration provision, but on the other hand, deny the arbitration provision's applicability because

19   the defendant is a non-signatory."  *Fujian*, 2004 WL 2645974, at *5; *see also Larson v. Speetjens*,

20   No. C 05-3176 SBA, 2006 WL 2567873, *4 (N.D. Cal. Sept. 5, 2006) ("A party should not be

21   allowed to claim the benefit of the contract and simultaneously avoid its burdens").

22       Second,

23           where the conduct of a nonsignatory is substantially interdependent with the conduct
             of a signatory, unless the nonsignatory is compelled to arbitrate, arbitration

24           proceedings between the two signatories would be rendered meaningless and the
             federal policy in favor of arbitration effectively thwarted.  In other words, where a

25           lawsuit against nonsignatories is inherently bound up with claims against a signatory,
             the court should compel arbitration in order to avoid denying the signatory the benefit

26           of the arbitration clause, and in order to avoid duplicative litigation which
             undermines the efficiency of arbitration.

27

28   *Fujian*, 2004 WL 2645974, at *5 (quoting *MS Dealer*, 177 F.3d at 947 ).  *See Westmoreland v.*

UNITED STATES DISTRICT COURT
For the Northern District of California

1  *Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002) (providing that a nonsignatory can compel arbitration

2  when the signatory raises allegations of substantially interdependent and concerted misconduct by

3  the nonsignatory and the other signatory); *Thomson-CSF*, 64 F.3d at 778 (noting that a signatory can

4  be bound to arbitrate with a nonsignatory "because of the close relationship between the entities

5  involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and

6  duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined

7  with the underlying contract obligations"); *see also Comer*, 436 F.3d at 1101 (acknowledging the

8  same but not applying the theory because, unlike here, it was a signatory, and not a nonsignatory,

9  who invoked estoppel).

10  Because Mr. Mance does not bring any claims against Dealer – and so there are no claims

11  against a nonsignatory that are "inherently bound up" with claims against a signatory – only the first

12  theory of equitable estoppel applies. *See Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D.

13  Cal. 2006); *see also Southern Energy Homes, Inc. v. Kennedy*, 774 So.2d 540, 545 (Ala. 2000)

14  (noting that "'intertwining' requires at least two threads to weave together"). And, upon

15  examination, Mercedes-Benz should be allowed to compel Mr. Mance to arbitrate his claim because

16  his claim "makes reference to or presumes the existence of" the underlying contract. Mercedes-

17  Benz's duty to comply with its warranty arose only when Mr. Mance bought the car. Had he not

18  signed the contract, he would not have received the warranty from Mercedes-Benz. In other words,

19  his claim for breach of warranty is premised on, and arises out of, the contract. *See Fujian*, 2004

20  WL 2645974, at *6 (Patel, J.) ("Fujian's claims against Bechtel directly relate to the Construction

21  Agreement and the Engineering Contract. Indeed, the Corporate Guaranty premises Bechtel's

22  liability for money damages solely on the failure of [Bechtel's subsidiaries] to fulfill their

23  obligations under those agreements."); *but see Hawkins*, 423 F. Supp. 2d at 1050-51 (Patel, J.)

24  (Defendant argued that Plaintiff could not have purchased a tax shelter without executing a warrant

25  that contained an arbitration clause; the court rejected Defendant's equitable estoppel argument,

26  stating: "[U]nlike the claims in *Fujian* and the cases cited by defendants, plaintiff's claims do not

27  rely on the content of the Warrant for their success. As already discussed plaintiff's fraud claims

28  depend only on the sale of the tax shelter as a whole. The complex innards of the shelter are for all

UNITED STATES DISTRICT COURT
For the Northern District of California

1   relevant purposes a black box.") (internal citation omitted). In such a situation, it would not be fair
2   to allow Mr. Mance to rely upon his signing the contract to buy the car and get the warranty but to
3   prevent Mercedes-Benz from attempting to enforce the contract's arbitration clause.

4   **B. Whether the Arbitration Clause is Unconscionable**

5       Mr. Mance also argues that the arbitration clause is unenforceable because it is unconscionable.
6   Because Mr. Mance is the party opposing enforcement of the arbitration agreement, he bears the
7   burden to prove this defense. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972
8   (1997).

9       1.  *AT&T Mobility, LLC v. Concepcion*

10      Mercedes-Benz contends that *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740 (2011),
11  precludes Mr. Mance from arguing that an arbitration clause is unconscionable under California law.
12  *See* Motion, ECF No. 6 at 9. In *Concepcion*, the Supreme Court reviewed the California rule that an
13  arbitration agreement that is part of a consumer contract and that contains a class action waiver
14  generally is unconscionable. (This rule is known as the *Discover Bank* rule, for the California
15  Supreme Court opinion so holding. *See Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005).)
16  The Supreme Court held that the *Discover Bank* rule was preempted by the FAA because
17  "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of
18  arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 131 S.Ct at 1748.
19  This holding, however, does not reach as far as Mercedes-Benz suggests. As Judge Chen recently
20  explained: "In *Concepcion*, the Supreme Court specifically noted that the FAA 'permits agreements
21  to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or
22  unconscionability, [although] not by defenses that apply only to arbitration or that derive their
23  meaning from the fact that than agreement to arbitrate is at issue.' In short, arbitration agreements
24  are still subject to unconscionability analysis." *Kanbar v. O'Melveny & Myers*, No. C-11-0892
25  EMC, 2011 WL 2940690, at *6 (N.D. Cal. July 21, 2011); *see also Mission Viejo Emergency*
26  *Medical Assocs. v. Beta Healthcare Group*, 197 Cal. App. 4th 1146, 1158 n.4 (2011) ("Defendants
27  appear to argue that AT & T essentially preempts all California law relating to unconscionability.
28  We disagree, as the case simply does not go that far."). Therefore, the court will address Mr.

Mance's unconscionability argument below.

2.   <u>Unconscionability</u>

To determine whether an agreement to arbitrate is enforceable, the court must "apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "General contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Id*. (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) (citing same). "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract." Cal. Civ. Code § 1670.5(a).

Unconscionability has both a procedural and a substantive component. *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000). Although both components must be present before a court will refuse to enforce a contract, a sliding scale applies: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*.

I. Procedural Unconscionability

"The procedural element of the unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007) (citing *Kinney v. United HealthCare Services, Inc.*, 70 Cal. App. 4th 1322, 1329 (1999)). "The element focuses on oppression or surprise." *Id*. (citing *Armendariz*, 24 Cal. 4th at 114). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id*. (citing *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). "Surprise is defined as 'the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'" *Id*. (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997)) (internal quotation marks omitted).

"The California Supreme Court has consistently reiterated that '[t]he procedural element of an

UNITED STATES DISTRICT COURT
For the Northern District of California

unconscionable contract generally takes the form of a contract of adhesion.'" *Id*. (quoting *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005); citing *Armendariz*, 24 Cal. 4th at 113) (internal quotations omitted). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113. "[California] [a]ppellate courts considering unconscionability challenges in consumer cases have routinely found the procedural element satisfied where the agreement containing the challenged provision was a contract of adhesion." *Gatton*, 152 Cal. App. 4th at 582 (collecting cases).

Mr. Mance essentially argues that the sales contract here was presented to him on a "take-it-or-leave-it" basis and that the arbitration provision found within it was not specifically pointed out to him by the Dealer's representative and was "buried within" the contract rather than being clearly disclosed.

His argument that he was surprised by the arbitration agreement is not persuasive. The arbitration clause is found on the back of the contract and is highlighted by bold, capitalized text that alerts the reader as follows:

**ARBITRATION CLAUSE**

**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Universal Decl., ECF No. 7, Ex. A. Also, right above the final signature block of the contract is the following notice, again in bold, capitalized text:

**YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT**

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  **BEFORE YOU SIGN THIS CONTRACT, WE GAVE IT TO YOU, AND YOU**
**WERE FREE TO TAKE IT AND REVIEW IT.  YOU ACKNOWLEDGE THAT**
2  **YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE**
**ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING**
3  **BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETED FILLED-**
**IN COPY WHEN YOU SIGNED IT.**

4

5  *Id.* While Dealer's representatives may not have discussed the clause with him, it was hardly hidden

6  from him.  The arbitration clause is not printed in exceptionally small text or buried within a

7  contract that is pages upon pages long.  Rather, it is conspicuously labeled on the back side of a

8  single, double-sided piece of paper and there is fair warning next to the signature block.  In short,

9  Mr. Mance fails to convince the court that the arbitration clause was oppressive or took him by

10  surprise.  *See Chavez v. Bank of America*, No. C 10-653 JCS, 2011 WL 4712204, at *6 (N.D. Cal.

11  Oct. 7, 2011) ("As an initial matter, the Court rejects any suggestion that Plaintiffs are not bound by

12  the arbitration clause or the Terms of Use based purely on the fact that the Plaintiffs did not read the

13  contract or its terms.  The law is clear that a party entering a contract has responsibility for learning

14  its terms and that each and every term need not be explained orally to a party.") (citing *Higgs v.*

15  *Automotive Warranty Corp. of America*, 134 Fed. Appx. 828, 831 (6th Cir. 2005); *Murphy v.*

16  *DirecTV, Inc.*, No. 2:07–cv–06465–JHN–VBKx, 2011 WL 3319574 (C.D. Cal. Aug.2, 2011)); *cf.*

17  *Goodridge v. KDF Automotive Group, Inc.*, --- Cal. Rptr. 3d ----, 2012 WL 3635279, at *9 (2012)

18  ("There is no provision for Goodridge's signature or initials under or adjacent to that language.

19  Rather, his signature appears on the opposite side of the page under a larger, 'boxed-in' provision

20  regarding the lack of a 'cooling-off' period (unless otherwise agreed) that appears to the left of

21  above-quoted language in the two-thirds width of the page adjacent to the left margin.  In the

22  circumstances of this case, we conclude that front-side reference to the back-side arbitration clause

23  was hidden within the prolix of the Contract in such a manner as to not reasonably notify Goodridge

24  of the existence of the arbitration clause.").

25      Under California precedent, however, the sales contract was a contract of adhesion.  Dealer,

26  which had superior bargaining strength, presented Mr. Mance with a form contract with the relevant

27  dollar amounts already filled in.  Mance Decl., ECF No. 13-1 ¶ 4.  Mr. Mance states that he did not

28  have an opportunity to negotiate its terms.  *Id.* ¶ 6.  In sum, Mr. Mance either had to accept the

contract's terms as they were presented to him, or walk away from the purchase entirely. *Id.* ¶¶ 4-7. *See*, *e.g.*, *Gatton*, 152 Cal. App. 4th at 582 ("It is clear that the T-Mobile service agreement was a contract of adhesion: T-Mobile drafted the form agreement, its bargaining strength was far greater than that of the individual customers, and customers were required to accept all terms and conditions of the agreement as presented or forgo T-Mobile's telephone service."); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 89 (2003) ("The [automobile] lease was presented to plaintiffs for signature on a 'take it or leave it' basis. Plaintiffs were given no opportunity to negotiate any of the preprinted terms in the lease. The arbitration clause was particularly inconspicuous, [as it was] printed in eight-point typeface on the opposite side of the signature page of the lease. Gutierrez was never informed that the lease contained an arbitration clause, much less offered an opportunity to negotiate its inclusion within the lease or to agree upon its specific terms. He was not required to initial the arbitration clause.").

California law is unclear whether a finding that a contract is adhesive is also a finding of procedural unconscionability. *See Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819-20 (1981) ("To describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, 'the beginning and not the end of the analysis insofar as enforceability of its terms is concerned.' Thus, a contract of adhesion is fully enforceable according to its terms unless certain other factors are present which, under established legal rules – legislative or judicial – operate to render it otherwise.") (internal citations and footnotes omitted); *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1470 n.2 (2009) ("The adhesive nature of the contract will not always make it procedurally unconscionable. When bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal.") (citations omitted); *Gatton*, 152 Cal. App. 4th at 585 ("[W]e hold that absent unusual circumstances, use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives.") (footnote omitted); *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 557 (2005) (describing a contract of adhesion as "quintessential procedural unconscionability"); *Crippen v. Central Valley RV Outlet*, 124 Cal. App. 4th 1159, 1165-66 (2004) ("[T]here is no general rule that a form contract used by a party for many transactions is procedurally unconscionable. . . . In general,

UNITED STATES DISTRICT COURT
For the Northern District of California

nothing prevents purchasers of used vehicles from bargaining with dealers, even though dealers use form contracts, and nothing in the record shows that plaintiff could not bargain in this case."); *Flores*, 93 Cal. App. 4th at 853 ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."); *California Grocers Assoc., Inc. v. Bank of America, National Trust and Savings Accoc.*, 22 Cal. App. 4th 205, 214 (1994) ("To speak in terms of 'procedural' unconscionability is to elevate the fact of adhesiveness, which is not per se oppressive, to the same level as 'substantive' unconscionability, thus tending to obscure the real issue.").

The clear import of *Concepcion*, though, pushes against finding that an adhesive contract, without more, is *per se* procedurally unconscionable. *Concepcion*, 121 S.Ct. at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past."); *see also id.* at 1753 (Thomas, J., concurring) ("As I would read it, the FAA requires that an agreement to arbitrate be enforced unless a party successfully challenges the formation of arbitration agreement, such as by proving fraud or duress."). Indeed, recent federal opinions considering this question post-*Concepcion*, seem to agree. *See, e.g., Cruz v. Cingular Wireless*, LLC, 648 F.3d 1205, 1215 (11th Cir. 2011) ("In addition, like the plaintiffs in *Concepcion*, the Plaintiffs here do not allege any defects in the formation of the contract, aside from its generally adhesive nature, which alone is insufficient to invalidate a consumer contract.") (citing *Concepcion*, 131 S.Ct. at 1750, 1753); *Grabowski v. C.H. Robinson Co.*, No. 10cv1658, 2011 WL 4353998, at *10 (S.D. Cal. Sep. 19, 2011) ("Plaintiff has presented evidence that the agreements were presented on a 'take it or leave [it]' basis, with little or no option for the employee to negotiate. In light of the Supreme Court's decision in *Concepcion*, however, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability.") (citing *Concepcion*, 121 S.Ct. at 1750); *Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC (JCGx), 2011 WL 4442790, at *3 (C.D. Cal. Sep. 16, 2011) ("Here, the arbitration agreement is not procedurally unconscionable. Although Plaintiffs assert the arbitration agreement was a contract of adhesion, presented a mandatory condition of employment, '[t]he adhesive nature of [a] contract will not always make it procedurally unconscionable. When bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal.'") (quoting *Roman*, 172 Cal. App.

1    4th at 1470 n.2); *In re Gateway LX6810 Computer Products Litig.*, No. SACV 10-1563-JST (JEMx),

2    2011 WL 3099862, at *3 (C.D. Cal. July 21, 2011) ("Plaintiffs' procedural unconscionability

3    argument is indistinguishable from the assertion that the [arbitration agreement] was contained

4    within a contract of adhesion.  In California, 'a contract of adhesion is fully enforceable according to

5    its terms unless certain other factors are present which, under established legal rules – legislative or

6    judicial – operate to render it otherwise.'  Thus, the Court concludes that Plaintiff has not shown that

7    the [arbitration agreement] is procedurally unconscionable.") (internal citations omitted) (quoting

8    *Graham*, 28 Cal. 3d at 819-20); *Bernal v. Burnett*, No. 10-cv-01917-WJM-KMT, 2011 WL

9    2182903, at *6 (D. Colo. June 6, 2011) ("[T]he fact that the contract at issue in *Concepcion* was an

10   adhesion contract did not affect the Supreme Court's analysis and, indeed, the majority in

11   *Concepcion* appears to be little troubled by that fact.  As a result, this Court has no alternative but to

12   discount the weight to be attributed the adhesive nature of the Arbitration Agreements at issue

13   here.").

14        In this post-*Concepcion* legal landscape, the court cannot find that the adhesive sales contract

15   Mr. Mance signed was procedurally unconscionable.  As stated above, the arbitration provision was

16   highlighted, apparent, and not oppressive, and it should not have taken Mr. Mance by surprise.

17   Moreover, it is unclear whether Mercedes-Benz, in this particular instance, was in the stronger

18   negotiating position.[7]  *See Gatton*, 152 Cal. App. 4th at 583 ("The existence of consumer choice

19   decreases the extent of procedural unconscionability but does not negate the oppression and obligate

20   court to enforce the challenged provision regardless of the extent of substantive unfairness.").  And

21   while the contract was adhesive, this fact, alone and after *Concepcion*, does not render the

22   arbitration provision procedurally unconscionable.  Thus, because procedural unconscionability

23   must be present before a court will refuse to enforce a contract, Mr. Mance's unconscionability

24   argument fails.

25            ii. Substantive Unconscionability

26   _____

27        [7] *See* Dale Kasler, *Car-mecca state suffers; Region hit hard by auto slump; Dealers close,
     staffs cut, tax revenue down*, SACRAMENTO BEE, Nov. 30, 2008, at A1; Jon Ortiz and Dale Kasler ,
28   *Lagging car sales add to state's woes*, SACRAMENTO BEE, Oct. 28, 2008, at A1.

C 11-03717 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Even so, for Mr. Mance to defeat Mercedes-Benz's motion, the arbitration clause would have to

2   be substantively unconscionable. *Armendariz*, 24 Cal. 4th at 114.  Substantive unconscionability

3   focuses on the harshness and one-sided nature of the substantive terms of the contract. *A & M*

4   *Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486–87 (1982).  An adhesive agreement to

5   arbitrate will satisfy this general standard for substantive unconscionability if the agreement lacks a

6   "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 117.  Whether an arbitration agreement is

7   sufficiently bilateral is determined by an examination of the actual effects of the challenged

8   provisions. *Ellis v. McKinnon Broadcasting Co.*, 18 Cal. App. 4th 1796, 1803 (1993) ("Substantive

9   unconscionability . . . refers to an overly harsh allocation of risks or costs which is not justified by

10  the circumstances under which the contract was made.") (internal quotation marks omitted).

11  Mr. Mance contends that the arbitration clause is substantively unconscionable for the following

12  reasons: (1) the cost of arbitration – which he states would be $10-15,000 – is prohibitively high; (2)

13  the binding arbitration would leave him with limited appeal rights; (3) the selection of the arbitral

14  forum is within the control of Mercedes-Benz, and (4) unlike Mercedes-Benz, he has no self-help

15  remedies.  Opposition, ECF No. 13 at 19-23; Gray Decl., ECF No. 13-2 ¶¶ 6-10, 12, Ex. C..

16  Regarding his first argument, courts have concluded that "where a consumer enters into an

17  adhesive contract that mandates arbitration, it is unconscionable to condition that process on the

18  consumer posting fees he or she cannot pay." *Gutierrez*, 114 Cal. App. 4th at 89-90; *see also*

19  *Ramirez*, No. C 04-00281 JSW, 2005 WL 2894628, at *5 (N.D. Cal. Nov. 2, 2005) ("California

20  appl[ies] the principle that if a litigant is required to arbitrate statutory claims, he or she must be able

21  to effectively vindicate those rights in the arbitral forum and cannot be required to pay fees that he

22  or she would not be required to pay to litigate those claims in court.") (citations omitted); *Parada v.*

23  *Superior Court*, 176 Cal. App. 4th 1554, 1574, 1584-85 (2009) (arbitration would have required the

24  plaintiffs to pay arbitral fees in excess of $12,000 per day under the challenged arbitration clause;

25  court followed *Gutierrez* and found clause to be substantively unconscionable).

26  *Gutierrez* is instructive.  In that case, the plaintiffs entered into an automobile lease with the

27  defendants. *Gutierrez*, 114 Cal. App. 4th at 83.  The lease contained an arbitration clause that

28  required disputes to be arbitrated under the authority and rules of the American Arbitration

C 11-03717 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Association ("AAA").  *Id*. at 84.  The plaintiffs later sued the defendant lessor for violation of

2    statutory rights, and the defendant moved to compel arbitration.  *Id*. at 85.  The plaintiffs opposed

3    the defendant's motion, in part, on the ground that the arbitral forum fees exceeded their ability to

4    pay.  *Id*.

5            The court found that, in carrying their burden, the plaintiffs would have been required to spend

6    more than $10,000, exclusive of attorney's fees, to arbitrate their case.  *Id*. at 85, 91.  The plaintiffs

7    submitted evidence that demonstrated that they did not have the money to pay these fees and costs.

8    *Id*. at 90-91.  And, unlike in the judicial system, there was no effective procedure for a consumer to

9    obtain a fee waiver or reduction.  *Id*. at 91.  The defendant pointed out that the plaintiffs, should they

10   win, may be reimbursed, but the court noted that this provided "little comfort to consumers like

11   plaintiffs here, who cannot afford to initiate the arbitration process in the first place."  *Id*. at 90.

12   "While arbitration may be within the reasonable expectations of consumers," the court stated, "a

13   process that builds prohibitively expensive fees into the arbitration process is not."  *Id*.  The court

14   thus found the arbitration clause substantively unconscionable and held that "consumers may

15   challenge a predispute arbitration clause as unconscionable if the fees required to initiate the process

16   are unaffordable[] and [if] the agreement fails to provide the consumer an effective opportunity to

17   seek a fee waiver."  *Id*. at 83.

18           The situation here is similar.  The arbitration clause allows Mr. Mance to choose to arbitrate with

19   the AAA (as the plaintiffs in *Gutierrez* were required), the National Arbitration Forum ("NAF"), or

20   "any other organization that you choose subject to [Mercedes-Benz's] approval."  Universal Decl.,

21   ECF No. 7, Ex. A.  Mr. Mance's counsel submitted a declaration stating that the NAF does not

22   conduct arbitrations involving individual parties and that the estimated AAA fees to be borne by Mr.

23   Mance, according to its publicly-available fee schedule, would be approximately $10,000, even after

24   the $2,500 fee advance from Mercedes-Benz that the arbitration clause contemplates.  Gray Decl.,

25   ECF No. 13-2 ¶¶ 6-10, 12, Ex. C.  Mr. Mance submitted a declaration stating that he does not have

26   the financial resources to pay such costs.  Mance Decl., ECF No. 13-1 ¶ 13.

27           Mercedes-Benz counters in two ways: (1) *Concepcion* precludes this substantive

28   unconscionability analysis; and (2) Mr. Mance will not pay the arbitral fees because his attorney is

1    likely representing him on a contingency fee basis.

2        First, Mercedes Benz contends that *Concepcion* precludes this court from relying on the

3    substantive unconscionability analysis set forth in *Gutierrez*.  In *Concepcion*, the court held that the

4    California Supreme Court's rule in *Discover Bank* — that class action waivers in consumer

5    arbitration agreements may be unenforceable or unconscionable — is preempted by the FAA

6    because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of

7    arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748.  In so holding, the

8    Court explained that while "[t]he final phrase of [9 U.S.C.] § 2 . . . permits arbitration agreements to

9    be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any

10   contract[,]' [t]his savings clause [only] permits agreements to arbitrate to be invalidated by

11   'generally applicable contract defenses, such as fraud, duress, or unconscionability,' *but not by*

12   *defenses that apply only to arbitration or that derive their meaning from the fact that an agreement*

13   *to arbitrate is at issue.*" *Id.* at 1746 (emphasis added).  In other words, *Concepcion* holds that

14   contract defenses that interfere with fundamental objectives of arbitration are preempted.

15       The question, then, becomes: What contract defenses so interfere?  In its decision, the Court

16   highlighted informality, efficiency, speed, and relative inexpensiveness as fundamental attributes of

17   arbitration.  *Id.* at 1749 ("The point of affording parties discretion in designing arbitration processes

18   is to allow for efficient, streamlined procedures tailored to the type of dispute.  It can be specified,

19   for example, that the decision-maker be a specialist in the relevant field, or that proceedings be kept

20   confidential to protect trade secrets.  And the informality of arbitral proceedings is itself desirable,

21   reducing the cost and increasing the speed of dispute resolution.").  Moreover, the Court's examples

22   of rules that likely would run afoul of these attributes (such as a rules requiring judicially-monitored

23   discovery, adherence to the Federal Rules of Evidence in arbitration, or ultimate disposition of the

24   arbitration by a panel of twelve lay arbitrators) further emphasize the importance of these attributes.

25   *See id.* at 1747; *see also Kanbar v. O'Melveny & Myers*, No. C-11-0892 EMC, 2011 WL 2940690,

26   at *9 (N.D. Cal. July 21, 2011).

27       Here, this court does not believe that the rule set forth in *Gutierrez* – that "consumers may

28   challenge a predispute arbitration clause as unconscionable if the fees required to initiate the process

UNITED STATES DISTRICT COURT
For the Northern District of California

C 11-03717 LB
ORDER

18

UNITED STATES DISTRICT COURT
For the Northern District of California

1  are unaffordable[] and [if] the agreement fails to provide the consumer an effective opportunity to

2  seek a fee waiver" – runs afoul of those fundamental attributes.  Indeed, the Court itself has

3  recognized – albeit in the federal context – that an arbitration agreement may be unenforceable if the

4  existence of large arbitration costs preclude a litigant from effectively vindicating his federal

5  statutory rights in an arbitral forum.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90

6  (2000); *see also Kaltwasser v. AT&T Mobility LLC*, No. C 07-00411 JF, 2011 WL 4381748, at *6

7  (N.D. Cal. Sep. 20, 2011) (noting that although *Concepcion* did not explicitly overrule *Green*

8  *Tree*,"[i]f *Green Tree* has any continuing applicability, it must be confined to circumstances in

9  which a plaintiff argues that costs specific to the arbitration process, such as filing fees and

10  arbitrator's fees, prevent her from vindicating her claims.").  Requiring arbitration agreements to

11  either provide for affordable arbitral fees or provide an effective opportunity for a party to seek a fee

12  waiver would not hinder arbitration's informality, efficiency, or speed, and, in fact, would reinforce

13  its relative inexpensiveness.  Thus, Mercedes-Benz fails to persuade the court that *Gutierrez* is no

14  longer good law.

15      Second, Mercedes Benz argues that even if *Gutierrez* is good law, it is inapplicable here.  It

16  contends that Mr. Mance's counsel is likely representing him on a contingency fee basis, so Mr.

17  Mance would not be paying these costs anyway.  This point is unpersuasive.  First, Mercedes-Benz

18  cites no authority for distinguishing between plaintiffs who are represented by counsel on a

19  contingency fee basis and those who are not.  Second, doing so arguably would lead to the unfair

20  results: the arbitration clause at issue would be enforceable with respect plaintiffs who are

21  represented by counsel on a contingency fee basis but would be unconscionable with respect to

22  plaintiffs who are either paying for their counsel upfront or who are representing themselves.  Third,

23  much more practically, the arbitral forum carries substantially higher costs than the relatively

24  modest costs associated with the federal judicial forum (particularly because discovery costs are

25  often modest in these types of cases).

26      Accordingly, this court finds that the arbitration clause is substantively unconscionable because

27  Mr. Mance has shown that the fees required to initiate the arbitral process are unaffordable and that

28  the arbitration agreement fails to provide him with an effective opportunity to seek a fee waiver.

C 11-03717 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Mr. Mance's remaining three arguments are less persuasive.  He argues that the binding

2    arbitration would leave him with limited appeal rights, but conclusiveness is one of the primary

3    purposes of arbitration.  *Moncharch v. Heily & Blase*, 3 Cal. 4th 1, 11 (1992) (noting that the "very

4    essence" of arbitration connotes a binding award).  The arbitration clause here allows either party to

5    appeal if the arbitrator's award is either $0 or more than $100,000.  Universal Decl., ECF No. 7, Ex.

6    A.  Mr. Mance cites *Saika v. Gold*, 49 Cal. App. 4th 1074, 1076-77 (1996), but in that case, the

7    arbitration agreement provided virtually no conclusiveness if the plaintiff won the arbitration, as it

8    allowed a party to disregard the result only if the arbitration award exceeded $25,000 – a choice

9    which, in that case's context, would almost certainly only have been chosen by a losing defendant.

10   This provision is not nearly so one-sided.

11   He also argues that the arbitration clause is unconscionable because the selection of the arbitral

12   forum is within the control of Mercedes-Benz, but he cites no authority for this argument.  In any

13   case, the arbitration agreement provides Mr. Mance with a choice of two common arbitration

14   associations and allows him to suggest an alternative.  Universal Decl., ECF No. 7, Ex. A.  His

15   contention that Mercedes-Benz would refuse any suggested alternative is speculative.

16   Lastly, he argues that the arbitration clause is unconscionable because it leaves open self-help

17   remedies, such as repossession, to Mercedes-Benz.  He, on the other hand, has no such self-help

18   remedies.  Again, Mr. Mance cites no authority for the proposition that such a provision renders an

19   arbitration agreement unconscionable.  The case he does cite involved an arbitration clause that

20   required an employee's claims against the employer to be arbitrated, but did not so require the

21   employer's claims against an employee.  *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173

22   (9th Cir. 2003).  The situations are not analogous.

23   In sum, the court finds that Mr. Mance has established substantive unconscionability.  But

24   because both procedural and substantive unconscionability must be present and the court found

25   above that the arbitration agreement was not procedurally unconscionable, Mr. Mance's

26   unconscionability argument fails.

27   ///

28   ///

C 11-03717 LB
ORDER

20

**V.  CONCLUSION**

Based on the foregoing, Mercedes-Benz's motion to compel arbitration is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 28, 2012

_____
LAUREL BEELER
United States Magistrate Judge